**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.

In re Application of PALANTIR TECHNOLOGIES INC. for
an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery
for Use in Foreign Proceedings

---

**PALANTIR TECHNOLOGIES INC.'S APPLICATION AND PETITION**
**FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782 TO OBTAIN**
**DISCOVERY FOR USE IN FOREIGN PROCEEDINGS**

---

Pursuant to 28 U.S.C. § 1782, Applicant Palantir Technologies Inc. respectfully requests the Court's authorization to obtain discovery in aid of two related German proceedings. This Application is a successor to an application the Court granted by stipulated order last October in *In re Application of Palantir Technologies Inc.*, No. 21-mc-00188-RM (D. Colo. Oct. 14, 2021) ("*Palantir I*"). For the reasons detailed below, Palantir requests that the Court (i) permit Palantir to serve on Respondent Marc L. Abramowitz the subpoena attached as Exhibit D; (ii) direct Abramowitz to produce documents responsive to the subpoena within 14 days of service; and (iii) direct Abramowitz to appear for a three-and-a-half-hour deposition prior to July 13, 2022.

## I.    PRELIMINARY STATEMENT

In *Palantir I*, this Court ordered Abramowitz to produce to Palantir the transcript of deposition testimony Abramowitz gave in a lawsuit in the Superior Court of Delaware (the "Delaware Deposition") for use in patent entitlement proceedings (the "German Patent Litigation") pending before the Regional Court of Munich, Federal Republic of Germany ("German Court"). The Delaware Deposition showed that during the German Patent Litigation, Abramowitz submitted briefs to the German Court stating precisely the opposite of what he had testified to

under oath in Delaware. The conflicting testimony concerned a central issue in the German case: whether Abramowitz received Palantir's confidential information during a June 10, 2014 meeting between Abramowitz and a Palantir employee (the "June 10 Meeting"). Palantir used the discovery authorized in *Palantir I* to expose Abramowitz's contradictory representations in Germany. As a result, the German Court concluded that Abramowitz had attempted litigation fraud, a crime under German law; issued a default judgment against Abramowitz in the case that Palantir brought; and took the extraordinary step of filing a criminal complaint against Abramowitz with German law enforcement authorities. Abramowitz has acknowledged that he reviewed and approved the briefs his German counsel submitted to the German Court with the assistance of the very same U.S. counsel he worked with to prepare his U.S. testimony and who attended the Delaware Deposition. Now, Abramowitz has challenged the default judgment and a hearing is scheduled for July 2022 to evaluate his recently asserted defenses and explanations for making misleading statements to the German Court. The new Section 1782 Application seeks discovery to address a key issue in the ongoing and upcoming German proceedings: whether Abramowitz, in concert with his U.S. lawyers, attempted to defraud the German Court. Though the discovery Palantir seeks involves some communications between Abramowitz and his lawyers, Abramowitz indisputably waived attorney-client privilege when he invoked his communications with his lawyers before the German Court. Furthermore, the crime-fraud exception vitiates the attorney-client privilege for communications concerning Abramowitz's attempted litigation fraud.

     As detailed below, for years, both before and after the Delaware Deposition, Abramowitz submitted briefs in Germany asserting that he recalled the June 10 Meeting and that he did not receive during that meeting certain Palantir technical information. In the Delaware Deposition,

however, Abramowitz testified that he did not recall the June 10 Meeting at all.  In other words, Abramowitz testified to one thing under oath in the United States while telling the German Court precisely the opposite.

Days after Abramowitz was forced to produce the Delaware Deposition for use in Germany, he abruptly changed his story in the German Patent Litigation.  During an October 21, 2021 hearing, Abramowitz's counsel informed the German Court that Abramowitz did not recall the June 10 Meeting, a story which was diametrically opposite and irreconcilably different from Abramowitz's prior submissions.  The German Court demanded that Abramowitz's counsel explain this inconsistency.  Abramowitz's counsel attempted to characterize Abramowitz's statements in Germany and Delaware as not inconsistent, which the German Court expressly rejected.  The German Court then asked Abramowitz whether he had approved the relevant filings. He confirmed that he had, "[a]fter consult[ing] with my U.S. attorneys" from the Williams & Connolly firm.  Unambiguously putting his communications with counsel at issue, Abramowitz continued: "I relied on my US lawyers, as they know the facts."  The German Court found this testimony "evasive[]."

In a subsequent written order, the German Court concluded, based in part on the Delaware Deposition, that Abramowitz's conduct in Germany constituted a criminal attempt to mislead the court, an offense under German criminal law that is in the present case punishable by imprisonment of up to 10 years.  Accordingly, the German Court filed a criminal complaint, referring the matter to the Munich Public Prosecutor's Office for further proceedings.  Separately, Palantir filed its own criminal complaint in Germany against Abramowitz and his Williams & Connolly attorneys.

Now pending in Germany are (i) a civil proceeding to review the default judgment issued by the German Court and (ii) the public prosecutor's investigation of Abramowitz and his U.S. counsel (the "Criminal Investigation," and together, the "German Proceedings"). In addition, Palantir soon will extend its complaint in the German Patent Litigation to seek damages arising from Abramowitz's untruthful statements to the German Court in violation of the German Civil Code. An evidentiary hearing is scheduled in the German Patent Litigation for July 13, 2022. The Criminal Investigation is ongoing.

Important to each of these German Proceedings is the credibility of Abramowitz's explanations for his inconsistent statements. With respect to Abramowitz's testimony that he "relied on [his] US lawyers," for example, how could Abramowitz's consultations with Williams & Connolly have justified submitting briefs that the German Court concluded were evidence of an attempted crime? Do the circumstances, including the relevant facts known to Abramowitz and Williams & Connolly, really justify the submissions, or do they reflect an attempt to defraud the German Court about an outcome-determinative issue? And did Abramowitz and/or Williams & Connolly really inform Abramowitz's German counsel in writing that Abramowitz lacked recollection of the June 10 Meeting—as they asserted for the first time last week? As explained below, the answers to these questions may determine the results of Abramowitz's bid to overturn the default judgment against him and the extent of his criminal liability for attempted litigation fraud.

To obtain materials providing answers to these questions, Palantir has filed this successor Section 1782 application to *Palantir I* and requests discovery relevant to Abramowitz's recollection or lack of recollection as to the June 10 Meeting, including a narrow set of

Abramowitz's communications on that subject with his attorneys. As shown by *Palantir I*, Palantir meets the statutory requirements for discovery in aid of foreign proceedings, and the discretionary factors set out by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), favor granting the requested discovery. For these reasons and those detailed below, Abramowitz should be compelled to produce all documents relevant to his assertions to the German Court and appear for a half-day (3.5 hours) deposition.

## II.    FACTUAL BACKGROUND

### A.    The Parties

Palantir is headquartered in Denver. It was founded in 2003, focusing on software for big data analytics. Palantir has devoted many years to the development, testing, and invention of a wide variety of systems for processing and analyzing data.

Abramowitz, who resides in Aspen, was one of Palantir's early equity investors. *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 909 (N.D. Cal. 2019). Over time, Abramowitz established close relationships with Palantir's founders, officers and employees. *See* Declaration of Wolrad Prinz zu Waldeck und Pyrmont (Apr. 5, 2022) ("Waldeck Decl."), Ex. A-1, at 5–6 ("Patent Complaint"); Declaration of Simone Kämpfer (Apr. 5, 2022) ("Kämpfer Decl."), Ex. B-1, at 5 ("Palantir's Criminal Complaint").

### B.    Abramowitz Misappropriates Palantir's Confidential Information and Seeks to Patent Palantir's Inventions as His Own

Abramowitz maintained frequent exchanges with and positioned himself as a trusted advisor to Palantir, enjoying its full confidence. In this context, Abramowitz engaged in regular discussions with Palantir's senior management and employees about the company's most sensitive business strategies and trade secrets. *See* Patent Complaint at 6. Relevant here, on June 10, 2014,

Abramowitz met with Shyam Sankar, an employee of Palantir.  *See* Waldeck Decl., Ex. A-11, at 1 ("German Court's Criminal Complaint"); Palantir's Criminal Complaint at 5–6; Patent Complaint at 19.  During that meeting, Sankar described to Abramowitz key aspects of cyber inventions that Palantir developed.  *See* Patent Complaint at 19.

Following the June 10 Meeting, Abramowitz used the information Palantir provided him to submit patent applications, in his sole name, based on the cyber-security and cyber-insurance inventions developed by Palantir.  *See id.*  More specifically, Abramowitz filed applications for two European patents (the "Cyber Patents"), which concern technologies invented by Palantir to assist with the efficient detection, defense, and prevention of cyber attacks, as well as the risk-assessment and provision of insurance against such attacks.  *See id.* at 3, 7–8.  While Abramowitz's applications claim that he is responsible for the technological innovation underlying the Cyber Patents, the patents are based on the proprietary information that Abramowitz stole from Palantir.

### C.    Palantir Defends Its Intellectual Property

When Palantir learned of Abramowitz's betrayal, it took steps to protect its inventions. Among other things, Palantir brought interference proceedings before the U.S. Patent and Trademark Office and an action in California state court (which has since been removed to federal court) seeking damages for Abramowitz's misappropriation of Palantir's trade secrets.  Separately, Abramowitz commenced litigation in Delaware, allegedly seeking to vindicate his rights as a Palantir shareholder (the "Delaware Action"), and a contract claim in California.  These actions are all ongoing.  Appl. at 8, *Palantir I*, ECF No. 1.

**D.    Palantir Commences the German Patent Litigation and Brings Its First Application Pursuant to Section 1782**

To protect its intellectual property in Europe, on August 6, 2018, Palantir brought an action before the German Court, seeking, among other things, a declaration that (i) Abramowitz was not entitled to file the Cyber Patents and (ii) it is Palantir, not Abramowitz, that is entitled to patent and profit from the discoveries underlying the Cyber Patents.

Shortly after initiating the German Patent Litigation, Palantir sought discovery from the U.S. District Court for the Northern District of California (the "California Court") pursuant to 28 U.S.C. § 1782 for use in Germany.  *See Palantir Techs.,* 415 F. Supp. 3d 907.  The discovery sought pertained to, among other things, Abramowitz's knowledge and understanding of the technology underlying the Cyber Patents, his communications about that technology, and documents on which he intended to rely to support his entitlement to the Cyber Patents.  *Id.* at 909. The court granted Palantir's application on November 22, 2019.  *Id.*   Since the application was granted, Abramowitz has produced documents that have been submitted to the German Court.  *See* Waldeck Decl., ¶ 47.

**E.    Abramowitz Waives Privilege for the First Time**

In defending against Palantir's claims in Germany, Abramowitz asserted that he developed the technologies underlying the Cyber Patents with the assistance of his patent attorney John Squires.  Attempting to prove this point, Abramowitz selectively referenced and then disclosed privileged communications with Squires, and proffered Squires as a witness in the German Patent Litigation.  Declaration of David Y. Livshiz (Apr. 5, 2022) ("Livshiz Decl."), Ex. C-1, at 3–4 ("California Court Sept. 11, 2020 Order"); *id.,* Ex. C-2, at 2 ("California Court Nov. 10, 2020 Order").  But while relying on his counsel's testimony, Abramowitz invoked attorney-client

privilege to try to shield from Palantir the rest of his communications with Squires on this subject. Palantir sought judicial intervention, and the California Court *twice* ruled that Abramowitz had waived privilege under the sword-shield doctrine. California Court Sept. 11, 2020 Order at 3–4; California Court Nov. 10, 2020 Order at 2–3 (critiquing Abramowitz's "blatant gamesmanship" in "intentionally" "disclos[ing privileged] emails that support his defense, but withhold[ing related] emails . . . on grounds of attorney-client privilege").[1]

### F. Abramowitz Asserts Specific Recollections of the June 10 Meeting in Multiple Submissions to the German Court Despite Claiming to Have No Recollection in Testimony in the United States

The June 10 Meeting between Abramowitz and Sankar is "decisive for the outcome" of Palantir's claim in Germany, German Court's Criminal Complaint at 2, as it was at that meeting— among others—that Abramowitz learned about Palantir's inventions underlying the Cyber Patents. To demonstrate these communications, Palantir proffered Sankar's testimony about the meeting. Because the conversation was a "four-eye" conversation—taking place between two individuals— only Abramowitz and Sankar could offer first-hand testimony as to what took place.

Abramowitz therefore had every incentive to inform the German Court that he recalled the June 10 Meeting. And that is what Abramowitz did. Repeatedly. *See, e.g.*, Waldeck Decl., Ex. A-2 (Abramowitz's Nov. 20, 2019 Response to the Complaint), ¶ 137 ("The unsubstantiated assertions . . . that in this meeting Mr. Sankar also explained 'all of the aspects later incorporated by [Abramowitz] into the Applications in Suit' . . . are incorrect and are *denied*.") (emphasis in

---

[1] Finding that Abramowitz has "a history" of "selectively waiving the privilege to his own advantage," the California Court recently ordered the production for *in camera* review of nearly 40 documents Abramowitz withheld notwithstanding the California Court's two waiver orders. Livshiz Decl., Ex. C-3, at 2 ("California Court Apr. 1, 2022 Order").

original); *id.*, Ex. A-3 (Abramowitz's Aug. 7, 2020 Rejoinder), ¶¶ 131, 133 (affirming that "this discussion . . . took approximately one hour and undisputedly dealt with other topics as well" and "den[ying] that details of the Applications in Suit were communicated to him in this discussion").

The topic of the June 10 Meeting, however, also came up in the Delaware Action. There, unknown to Palantir's German counsel and acting under the protection afforded by a protective order, on October 1, 2020, Abramowitz testified in the Delaware Deposition that "*he did not remember the meeting on 10 June 2014,* which he confirmed *several times* during his deposition (upon incredulous inquiry, apparently)." German Court's Criminal Complaint at 2 (emphasis in original); *see also* Livshiz Decl., Ex. C-4, ¶ 4 ("Delaware Motion in Limine") (claiming that "Abramowitz has consistently testified . . . that he does not remember any such meeting"). Five days later, on October 6, 2020, Abramowitz submitted his next brief in the German Patent Litigation, stating the *exact opposite*: "According to Defendant's *recollection* in particular technical aspects were not mentioned in the conversation [during the June 10 Meeting]." Waldeck Decl., Ex. A-4 (Abramowitz's Oct. 6, 2020 Quadruplica), ¶ 56 (emphasis added). Abramowitz even listed ten specific statements that Sankar purportedly *did not* make during the June 10 Meeting, concluding that he was "consistent in his recollection." *Id.*, ¶¶ 57–58.

Thus, Abramowitz testified to one thing under oath in Delaware, *see* Delaware Motion in Limine, ¶ 4, while telling the German Court precisely the opposite both before and after the Delaware Deposition.

### G. Palantir Brings Application for Discovery in *Palantir I* to Obtain the Delaware Deposition for Use in Germany

Faced with conflicting representations by Palantir and Abramowitz concerning, *inter alia*, the June 10 Meeting, the German Court issued an order stating that it would "take evidence" on

several topics on October 21, 2021, including Abramowitz's "recollections of the conversation on 10 June 2014" (the "Evidentiary Hearing").  German Court's Criminal Complaint at 2; *see also* Waldeck Decl., Ex. A-6 (Annex 1 to the German Court's Indicative Order and Order to Take Evidence), at 6–7; *id.*, Ex. A-5 (Summons), at 1.

As the Evidentiary Hearing approached, Palantir's German counsel asked to review Abramowitz's deposition transcript in the Delaware Action.  Abramowitz declined, citing confidentiality requirements in the Delaware Action.  Faced with this obfuscation, Palantir sought the deposition transcript through the *Palantir I* proceedings before this Court.  Appl., *Palantir I*, ECF No. 1.  Abramowitz eventually relented and agreed to enter a stipulated agreement asking this Court to grant Palantir's application and direct the parties to exchange the transcripts of Abramowitz's and Sankar's deposition testimony in the Delaware Action.  Order at 1, *Palantir I*, ECF No. 16.  This Court granted the stipulated order.  *Id.* at 10.[2]

Thus, one week before the Evidentiary Hearing, Palantir finally obtained the right to use the transcript of Abramowitz's Delaware Deposition in Germany.  It was upon receiving Abramowitz's deposition transcript on the night of October 18 that Palantir's German counsel first became aware of the contradiction between Abramowitz's representations to the German Court and his Delaware testimony.  Waldeck Decl., ¶ 13.

---

[2] That order limits the transcript's use to proceedings in Germany and Palantir I.  Consequently, Palantir cannot exhibit the transcript in this proceeding.  Palantir has moved to modify the terms of the Colorado protective order so that the transcript may be available to this Court, should this Court wish to inspect it in relation to this Application.  Alternatively, this Court may also order Abramowitz to produce the transcript in this proceeding.

**H.    Testifying Under the Threat of Immediate Arrest, Abramowitz Invokes Williams & Connolly's Advice When Questioned by the German Court Regarding His Inconsistent Statements**

At the start of the Evidentiary Hearing, the German Court noted that "irreconcilable statements by the parties are at issue" and warned that it was ready to "initiate the necessary measures" "in the event of a criminal offence being committed . . . such as . . . an attempted trial fraud." Waldeck Decl., Ex. A-7, at 3 ("Hearing Minutes"). Under the German Criminal Code, litigation fraud involves "deceiving the court about facts relevant to the judgement with the aim of obtaining a more favorable decision with financial advantages." Kämpfer Decl., ¶ 8. Having received the warning, and aware that Palantir's German counsel now knew of Abramowitz's inconsistent statements about the June 10 Meeting, Abramowitz's German counsel tried to reconcile Abramowitz's positions, asserting that he had "in the last few days" learned "that Mr. Abramowitz did not remember [the June 10 Meeting] and therefore could not make any statement on the content of the conversation." Hearing Minutes at 3.

The German Court expressly rejected these attempts to reconcile Abramowitz's contradictory representations, explaining that it was "impossible" to do so. Waldeck Decl., ¶ 18. It then demanded that Abramowitz explain his knowledge of the inconsistent statements in his German briefs and the Delaware Deposition. Testifying under oath and the threat of immediate arrest, Abramowitz confirmed that he had reviewed the draft submissions to the German Court professing his exact recollection of the June 10 Meeting: "*After consult[ing] with my U.S. attorneys* [Barry S. Simon and Stephen L. Wohlgemuth], I have approved the pleadings as being correct. . . . I relied on my US lawyers, as they know the facts." Hearing Minutes at 4 (emphasis added). Simon and Wohlgemuth also represent Abramowitz in the Delaware Action and were

11

present at the Delaware Deposition. They were, accordingly, aware that Abramowitz's Delaware testimony contradicted Abramowitz's representations to the German Court. Palantir's Criminal Complaint at 10. The German Court was unconvinced by Abramowitz's "evasive[]" testimony. Waldeck Decl., Ex. A-9 (German Court's Oct. 21, 2021 Memorandum and Note of Recollection), at 1. Subsequently, the German Court entered a default judgment against Abramowitz as Abramowitz elected not to file a motion to dismiss. *See id.*, Ex. A-8 ("Default Judgment").

## I.       Abramowitz Challenges the Default Judgment

Abramowitz has challenged the Default Judgment. In so doing, he argues that he had no memory of the June 10 Meeting but does not retract his former affirmative statements that he did not discuss the cyber technologies during the June 10 Meeting. *Id.*, Ex. A-10, ¶¶ 45, 109–10 ("Objection"). Apparently concerned that Palantir would try to use the Default Judgment in a then-scheduled forthcoming trial in the Delaware Action, Abramowitz moved to exclude it. *See* Delaware Motion in Limine. In his Delaware Motion in Limine, Abramowitz repeated the same assertions he made in his Objection about his recollection of the June 10 Meeting, while also suggesting that his statements to the German Court were the result of the brief being "reviewed in translation." *Id.*, ¶ 4 n.1.

Five months after the October hearing, on March 28, 2022, Abramowitz filed a new submission in Germany, offering a new excuse: the lawyer did it. That is, Abramowitz now argues that he and his Williams & Connolly lawyers had, all along, informed German counsel that Abramowitz did not recall the June 10 Meeting, and the German counsel misrepresented what Abramowitz and Williams & Connolly told them. Waldeck Decl., Ex. A-13, ¶ 4 ("Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief"). But while Abramowitz relies on alleged

correspondence between Abramowitz's German counsel and Williams & Connolly, Abramowitz has not presented the supposed correspondence. *See id.* Nor do Abramowitz's recent papers explain why it took five months for his German counsel to realize that he had made such a consequential and important mistake repeatedly, in numerous briefs to the German Court, or why the Williams & Connolly lawyers—who Abramowitz testified had reviewed his German briefs in 2020—did not ensure that they accurately reflected Abramowitz's recollection concerning the June 10 Meeting.

**J.    The German Court Concludes Abramowitz Committed a Crime and Refers the Matter to Law Enforcement**

After it had a chance to review Abramowitz's Objection and his Delaware Motion in Limine, on December 15, 2021, the German Court took the unusual step of issuing an order that "conclud[ed]" that Abramowitz committed "attempted litigation fraud[,]" and referred the case to the Munich Public Prosecutor's Office for further action. German Court's Criminal Complaint at 2–3. The German Court found that Abramowitz attempted to "induce the Chamber to make a decision in his favour (dismissal of the action) . . . [through] his allegedly concrete recollections of the [June 10 Meeting]," but that this attempt to mislead the German Court failed when he could no longer hold to that story because Palantir had obtained his contradictory testimony in the Delaware Action. *Id.* at 3. The German Court expressly determined that this conduct constituted a crime of attempted litigation fraud. *Id.*

Separately, Palantir filed its own criminal complaint on November 2, 2021, alleging that Abramowitz and his U.S. counsel, Simon and Wohlgemuth, had committed crimes under the German Criminal Code. *See* Palantir's Criminal Complaint at 1–2; Kämpfer Decl., ¶ 7.

After reviewing Palantir's Criminal Complaint and the criminal referral from the German Court, German law enforcement authorities have concluded that there is sufficient evidence to proceed with an official investigation.  Kämpfer Decl., ¶ 11.

### K.    Forthcoming Court Proceedings in Germany

After reviewing Abramowitz's Objection, the German Court scheduled a hearing for July 13, 2022 to evaluate Abramowitz's explanation of his inconsistent statements, and whether his new claims about his recollection of the June 10 Meeting are credible.  Waldeck Decl., ¶ 32.  If the German Court concludes that Abramowitz's claims are not credible, it will affirm the default judgment in Palantir's favor.  *Id.*, ¶ 33.

Meanwhile, Palantir is preparing an extension of its complaint in the German Patent Litigation to seek damages resulting from Abramowitz's untruthful statements to the German Court in violation of the German Civil Code.  *Id.*, ¶¶ 34–35.  Those damages include, among others, the costs of summoning numerous Palantir witnesses to Germany for the Evidentiary Hearing who might not have been summoned had Abramowitz been truthful in his written submissions to the German Court.  *Id.*  Separately, the Criminal Investigation of Abramowitz is ongoing.  Kämpfer Decl., ¶ 7.

## III.    REQUESTED DISCOVERY

As set out in more detail in the proposed subpoena attached as Exhibit D, Palantir seeks discovery related to the core topic at issue in the German Proceedings: Abramowitz's review and approval of filings made to the German Court concerning the June 10 Meeting, and his preparation for the Evidentiary Hearing.  More specifically, Palantir seeks discovery about Abramowitz's recollection of the June 10 Meeting, including his communications with Williams & Connolly and

his German counsel concerning (i) the relevant parts of his submissions in Germany (including any translations); (ii) his deposition testimony concerning the June 10 Meeting; and (iii) Abramowitz's recollection, or lack thereof, concerning the June 10 Meeting.

Because the document discovery at issue includes correspondence with counsel and draft documents, Palantir is limiting its discovery requests to information that Abramowitz put at issue by (i) asserting "I relied on my US lawyers" in response to the German Court's questions about his inconsistent statements, *see* Hearing Minutes at 4; (ii) suggesting that his statements to the German Court resulted from translation errors in communications among himself and his U.S. and German counsel, Delaware Motion in Limine, ¶ 4 n.1; and (iii) most recently, asserting that he and Williams & Connolly informed his German counsel that he did *not* remember the June 10 Meeting, despite German counsel's contrary submissions on his behalf to the German Court.  Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief, ¶ 4.  These matters are all directly related to Abramowitz's conduct in Germany that the German Court has described as criminal and fraudulent, as well as Abramowitz's explanations for such conduct.  Palantir seeks correspondence concerning only the relevant paragraphs of Abramowitz's submissions in Germany, not the submissions as a whole. Ex. D (Schedule A to Subpoena).

## IV.    ARGUMENT

Section 1782 allows a litigant in foreign proceedings to seek a "broad range of discovery" to "assist foreign tribunals in obtaining relevant information that the tribunals may find useful." *Intel*, 542 U.S. at 259, 262.  To be eligible for discovery under the statute, an applicant must demonstrate: (i) that the request is made by an interested person, (ii) that the evidence sought is

for use in a proceeding in a foreign or international tribunal, and (iii) that the person from whom discovery is sought is a resident in the district of the court receiving the application. *Id.* at 246.

Once an applicant establishes the statutory requirements are satisfied, the court has discretion to grant the application based on certain equitable considerations, including: (i) whether the discovery sought is within the jurisdiction of the foreign proceeding; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the Section 1782 request "conceals an attempt to circumvent foreign proof-gathering restrictions"; and (iv) whether the request is otherwise "unduly intrusive or burdensome." *See id.* at 264–65.

In exercising their discretion, courts should give effect to the twin aims of the statute: "providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Id.* at 252 (citations omitted); *Siemens AG v. W. Digit. Corp.*, 2013 WL 5947973, at *2 (C.D. Cal. Nov. 4, 2013) ("A district court's discretion is to be exercised in view of the twin aims of § 1782").

Such an exercise of discretion is particularly warranted here because Abramowitz has already sought to capitalize on the unavailability of evidence abroad to make fraudulent statements to the German Court—conduct which only came to light in Germany after this Court granted Section 1782 discovery in *Palantir I*.

### A.      Palantir's Application Meets the Section 1782 Requirements

Palantir satisfies the three statutory requirements: it is an "interested person" in the German Proceedings, which are foreign proceedings, and through this Application Palantir seeks discovery

16

from a person residing within this district. *Intel*, 542 U.S. at 246–49.  In stipulating that this Court grant the application in *Palantir I*, Abramowitz conceded the requirements for Section 1782 discovery were satisfied with respect to the same German litigation at issue here. *See* Order at 4, *Palantir I*, ECF No.  16.

The statutory requirements are also satisfied with respect to the Criminal Investigation.  As a complainant, Palantir has a judicially cognizable interest in the prosecution of Abramowitz's attempted litigation fraud and so is an "interested person" in that proceeding within the meaning of Section 1782.  *See Optimal Inv. Servs., S.A. v. Berlamont*, 773 F.3d 456, 458 & n.4 (2d Cir. 2014) (noting that "[i]n many European jurisdictions, private citizens can initiate criminal proceedings" and affirming grant of Section 1782 discovery requested by criminal complainant); *Campos-Álvarez v. Newmont Mining Corp.*, 2015 WL 1228262, at *1–2 (D. Colo. Mar. 16, 2015) (a complainant in a foreign criminal proceeding is an "interested person"); Kämpfer Decl., ¶ 15 ("Palantir is an independent party in the criminal investigation proceedings with comprehensive rights . . . [including the right] to submit evidence"); *see also Intel*, 542 U.S. at 256 (a "complainant who trigger[ed] a European Commission investigation" was an "interested person").

The Criminal Investigation is also a "proceeding in a foreign or international tribunal."  28 U.S.C. § 1782(a).  As numerous courts have held, criminal investigations carried out by a public prosecutor, like the Munich prosecutor here, constitute proceedings before a foreign "tribunal." *See, e.g.*, *Berlamont*, 773 F.3d at 461 & n.8 (explaining that a "Swiss investigating magistrate or public prosecutor is akin to the French *judges d'instruction*, which Judge Friendly held out as the paradigmatic example of a 'tribunal' for the purposes of § 1782" (citing *In re Letters Rogatory*, 385 F.2d 1017, 1020 (2d Cir. 1967))); *In re Eurasian Bank JSC*, 2020 WL 85226, at *1 (S.D.N.Y.

Jan. 2, 2020) (granting Section 1782 application where "[p]etitioners intend to use the discovery in an ongoing Kazakhstani criminal investigation"); *In re Jommi*, 2013 WL 6058201, at *1, *3 (N.D. Cal. Nov. 15, 2013) (granting discovery for criminal investigation conducted by Swiss prosecutor); *see* Kämpfer Decl., ¶ 12 (describing German public prosecutors as officials who are "obliged to conduct criminal investigations in an objective and neutral way").

Accordingly, Palantir's discovery requests with respect to both German Proceedings satisfy Section 1782's requirements.

## B. The *Intel* Discretionary Factors Strongly Favor Granting Discovery

Each of the four discretionary factors the Supreme Court outlined in *Intel*, 542 U.S. at 264–65, favors discovery.

### 1. The German Court and German Prosecutor May Not Compel Discovery of Evidence in the United States

As the California Court recognized, when, as here, discovery sought through Section 1782 is not available in the foreign proceeding, the first *Intel* factor supports discovery. *Palantir Techs.*, 415 F. Supp. 3d at 912–13. Although the Supreme Court in *Intel* referred to whether "the person from whom discovery is sought is a participant in the foreign proceeding," its reasoning—that "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence"—makes clear that the focus of the first discretionary factor is on whether the foreign tribunal can compel production of the evidence sought, not merely on the party status of the respondent to a Section 1782 application. *Intel*, 542 U.S. at 264. Courts have accordingly considered both the party status of a respondent *and* the capacity of a foreign tribunal to compel production of evidence in weighing *Intel*'s first factor. *See, e.g.*, *Westjest Airlines, Ltd. v. Lipsman*, 2015 WL 7253043, at *3 (D. Colo. Nov. 17, 2015) (noting that "the requested information does

not appear within the immediate reach of a Canadian tribunal" in weighing *Intel*'s first factor); *see also In re Accent Delight Int'l Ltd.*, 2018 WL 2849724, at *4 (S.D.N.Y. June 11, 2018) (stating that the first *Intel* factor "is concerned with the foreign tribunal's ability to control the evidence and order production, not the nominal target of the § 1782 application") (quotation marks omitted).

Here, the evidence Palantir seeks cannot be compelled in the German Proceedings because German courts cannot compel production in a civil suit.  Waldeck Decl., ¶¶ 40–41; *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (concluding the German litigant could not "obtain even remotely comparable discovery by utilizing German procedures").  Nor can the public prosecutor compel Abramowitz to produce evidence, as the evidence is located outside of Germany and Abramowitz has the right to refuse any cooperation in a criminal investigation.  Kämpfer Decl., ¶¶ 21–22; *cf. Consorcio Minero S.A. v. Doe Run Res. Corp.*, 2011 WL 4550200, at *3 (E.D. Mo. Sept. 30, 2011) (granting discovery and noting "the [Peruvian] Criminal Prosecutor does not have authority to compel compliance with discovery requests").  Simply put, the evidence "may be unobtainable absent § 1782(a) aid" notwithstanding Abramowitz's involvement in the German Proceedings.  *Intel*, 542 U.S. at 264.  Thus, the first *Intel* factor supports discovery.

2.    The German Court and Prosecutor Are Not Hostile to This Application

In evaluating the second *Intel* factor, courts should find in favor of discovery absent "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Salt Mobile S.A. v. Liberty Glob. Inc.*, 2021 WL 2375864, at *4 (D. Colo. June 10, 2021) (citing *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995)).  Far from there being such authoritative proof, the German Court overseeing the German Patent Litigation has

19

already admitted and relied on evidence obtained in Section 1782 discovery. In fact, this Application arises from the German Court's reliance on the discovery taken in *Palantir I*. Waldeck Decl., ¶ 47. Similarly, there is nothing that would prevent the German prosecutor from considering evidence that Palantir provides. Kämpfer Decl., ¶ 24. There is every reason to believe that the German Court and public prosecutor would welcome the evidence sought here as they evaluate whether Abramowitz attempted litigation fraud.

                3.      <u>The Application Has Not Been Filed to Circumvent Any Law or Rule</u>

Nor is Palantir seeking to circumvent German prohibitions with respect to gathering evidence or any other policy. German law in no way prohibits criminal complainants and litigation parties from seeking the assistance of U.S. courts in obtaining evidence. Waldeck Decl., ¶¶ 42–44; Kämpfer Decl., ¶ 26. Thus, the third *Intel* factor also favors granting the Application. *See In re Pérez Pallares*, 2010 WL 4193072, at *1 (D. Colo. Oct. 20, 2010) (granting Section 1782 application where "there is no indication on the present record that petitioners' request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States" (quotation marks omitted)).

                4.      <u>The Discovery Requests Are Not Unduly Intrusive or Burdensome</u>

Finally, the requested discovery is focused, highly relevant, and necessary for a fair and just resolution of the German Proceedings. *See Salt Mobile*, 2021 WL 2375864, at *5 (granting Section 1782 discovery after finding that "Petitioner's discovery requests are highly relevant to the claims it will bring in the Contemplated Swiss Proceedings and that they are sufficiently narrow in scope and time . . . to justify the burden of production imposed on Respondents"). Palantir seeks only testimony and documents related to Abramowitz's approval of filings made to the German

Court concerning the June 10 Meeting. Palantir's requests are narrowly tailored to capture evidence related to specific written and oral statements to the German Court and his correspondence about and recollection of the June 10 Meeting. The majority of Palantir's requests are temporally limited to the period from August 6, 2018, when Palantir commenced the German Patent Litigation, to the present, while the rest are bound to the period after the June 10 Meeting.

\* \* \*

For all these reasons, the *Intel* factors strongly favor the Court exercising its discretion to grant Palantir's Application. Courts routinely permit discovery under Section 1782 when, as here, the applicant satisfies the statutory requirements and the above factors weigh in favor of granting relief. *See, e.g.*, *Kozuch v. Kozuch*, 2018 WL 4376405, at \*2 (D. Colo. June 7, 2018) (granting Section 1782 application "[b]ecause all of the statutory requirements and discretionary factors related to section 1782(a) have been met"); *Interbrew Cent. Eur. Holding BV v. Molson Coors Brewing Co.*, 2013 WL 5567504, at \*2 (D. Colo. Oct. 9, 2013).

### C.    The Discovery Is Not Protected by Privilege

The testimony and documents Palantir seeks are not protected by attorney-client privilege or the work product doctrine. To the extent that the requested discovery includes information and documents that would ordinarily be protected by privilege, Abramowitz has waived privilege under the sword-shield and advice-of-counsel doctrines and the discovery is subject to the crime-fraud exception.

#### 1.    Abramowitz Has Waived Privilege Under the Sword-Shield and Advice-of-Counsel Doctrines

Abramowitz has waived attorney-client and work product privilege as to his communications with his lawyers regarding his representations about the June 10 Meeting in his

German submissions at least three times.  First, he did so when he tried to justify submitting filings in Germany that contradicted his sworn U.S. testimony by testifying in Germany that "[a]fter consultation with my U.S. attorneys, I have approved the [German] pleadings as being correct. The US lawyers consulted with the German lawyers on the content of the pleadings.  *I relied on my US lawyers*, as they know the facts."  Hearing Minutes at 4 (emphasis added).  To assess this purported defense, one needs the full context of the "consultations" and other communications with and among Abramowitz's U.S. and German attorneys on the subject matter of the supposed reliance.  Second, Abramowitz went further in the Delaware Action, where he suggested that any mistakes in his German filings were the result of faulty translations of the draft German filings, while requesting that the Delaware court exclude from an upcoming trial any reference to the German Patent Litigation.  Delaware Motion in Limine, ¶ 4 n.1.  It is reasonable to expect Abramowitz will make this same argument in Germany to defend his misstatements.  Third, Abramowitz's March 28, 2022 submission to the German Court again put otherwise privileged correspondence at issue by claiming that Williams & Connolly did inform Abramowitz's German counsel that Abramowitz "had already testified to having no recollection of the meeting," and that Abramowitz's German counsel's statement to the contrary during the Evidentiary Hearing was "unintentionally incorrect."  *See* Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief, ¶ 4.  This submission references supposed written communications between Abramowitz's U.S. and German attorneys to defend Abramowitz's inconsistent statements, but it does not attach these communications or directly cite from them; it also asserts that "there was no information to the contrary at any time from the U.S. attorneys or Defendant."  *Id.*  Obviously, neither Palantir nor the German Court can evaluate Abramowitz's arguments without reviewing the referenced alleged

communications and draft filings, as well as the other communications among Abramowitz and counsel on this subject. *See* California Court Sept. 11, 2020 Order at 4 ("In fairness, Palantir should be privy to any written communications on the same subject . . . ."); California Court Nov. 10, 2020 Order at 3 ("Federal law is not so impotent as to allow such blatant gamesmanship and conduct inconsistent with the purpose behind the privilege."); California Court Apr. 1, 2022 Order at 2 ("[T]here is a history in this case of [Abramowitz] selectively waiving the privilege to his own advantage."). To the extent these documents otherwise would be privileged, therefore, Abramowitz has put them at issue and they should be produced. *See Chevron Corp. v. Stratus Consulting, Inc.*, 2010 WL 3923092, at *10 (D. Colo. Oct. 1, 2010) ("Where a party injects part of a [privileged] communication as evidence, fairness demand that the opposing party be allowed to examine the whole picture" (citations omitted)).

Because Abramowitz has disclosed aspects of correspondence with Williams & Connolly and his German counsel for his own benefit, "fairness" precludes him from asserting privilege "as a shield to prevent [Palantir] from exploring fully the substance and circumstances" of those communications. *Kovacs v. Hershey Co.*, 2006 WL 2781591, at *6 (D. Colo. Sept. 26, 2006) (citations omitted); *see also Chevron*, 2010 WL 3923092, at *10 ("A litigant cannot use [a privilege] doctrine as both a sword and a shield by selectively using the privileged documents to prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." (citations omitted)). By now, Abramowitz should know that he cannot have it both ways. As the California Court has twice ruled, Abramowitz cannot selectively disclose his conversations with counsel without permitting Palantir to test the veracity of his statements by reviewing all correspondence between Abramowitz and counsel on that topic. *See* California

Court Sept. 11, 2020 Order at 3–4; California Court Nov. 10, 2020 Order at 2–3.  Exploring fully the substance and circumstances of the relevant communications means Palantir receiving (i) any drafts of the paragraphs in his German submissions that address the June 10 Meeting, (ii) any translations of the relevant portions of Abramowitz's submissions in Germany, and (iii) the documents and communications concerning these paragraphs and/or the June 10 Meeting Abramowitz exchanged with Williams & Connolly and/or Abramowitz's German counsel.

Abramowitz has also put Williams & Connolly's advice at issue by invoking it in response to judicial scrutiny of his misrepresentations.  Under the advice-of-counsel doctrine, Palantir is entitled to explore the substance of that advice, which Abramowitz invokes to maintain his rebuttal of a central factual allegation to Palantir's claims.  *See Fed. Deposit Ins. Corp. v. Wise*, 139 F.R.D. 168, 171 (D. Colo. 1991) (holding that a party has waived privilege "[i]f assertion of the privilege is the result of some affirmative act" through which the "party has placed the protected information at issue by making it relevant to the case," and where "application of the privilege would deny the opposing party access to information vital to its defense" (citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975))).

2.      The Crime-Fraud Exception Applies

In addition, where, as here, the communication between a client and a lawyer is made in furtherance of "a crime or fraud," the privilege is "vitiated by the crime-fraud exception." *Intervenor v. United States*, 144 F.3d 653, 659–60 (10th Cir. 1998).  To invoke the crime-fraud exception, a litigant must put forth "prima facie evidence that the allegation of attorney participation in the crime or fraud has *some foundation in fact*." *Id.* at 660 (emphasis added).  "The evidence must show that the client was engaged in or was planning the criminal or fraudulent

conduct when it sought the assistance of counsel." *Id.*; *see Chevron Corp. v. E-Tech Int'l*, 2010 WL 3584520, at *6–7 (S.D. Cal. Sept. 10, 2010) (affirming order granting Section 1782 discovery and applying the crime-fraud exception where there was evidence that applicant's foreign adversary colluded with a court-appointed expert).

At issue here is both a crime and fraud, or, more precisely, a crime that involves fraud. And Palantir puts forth far more than evidence of "some foundation in fact." *See Intervenor*, 144 F.3d at 660. The German Court *has already issued* an order "conclud[ing]" that Abramowitz "attempted litigation fraud" to "induce the Chamber to make a decision in his favour (dismissal of the action)" by authorizing his attorneys to submit briefs in which he claimed to have a recollection of the June 10 Meeting, despite testifying under oath in the Delaware Action that he had no recollection of that meeting. German Court's Criminal Complaint at 2–3. Nor is there any doubt as to the role of Abramowitz's counsel in this misconduct, as Abramowitz himself testified that he relied on Williams & Connolly to prepare the offending submissions and to confirm the accuracy of the facts contained therein. Hearing Minutes at 4; *see also* Palantir's Criminal Complaint at 7–8, 17. There is, therefore, ample evidence that Abramowitz was "engaged in . . . criminal or fraudulent conduct" and that he "used the legal services of [Williams & Connolly]" to "effectuate the crime or fraud." *See Intervenor*, 144 F.3d at 660–61. Palantir invites the Court to make its own determination after reviewing evidence of Abramowitz's conflicting statements and reach a prima facie determination.

Importantly, Palantir's requested document discovery is narrowly tailored to the very documents relevant to the alleged crime/fraud: the paragraphs about the June 10 Meeting in drafts of the pleadings Abramowitz submitted in Germany, which Abramowitz admits he reviewed with

assistance from Williams & Connolly, and correspondence concerning the June 10 Meeting.  *See* Ex. D (Schedule A to Subpoena), at 4–5; *see also Intervenor*, 144 F.3d at 660 (crime-fraud exception applies where counsel's assistance "was used to . . . perpetuate the crime or fraud"); *Chevron Corp. v. Snaider*, 78 F. Supp. 3d 1327, 1336 (D. Colo. 2015) (noting crime-fraud exception applies where "the purpose of the communication was to further crime or an intended fraud" (quoting *In re Grand Jury Proceedings*, 857 F.2d 710, 713 (10th Cir. 1988))); Hearing Minutes at 4; Waldeck Decl., ¶ 36.

Thus, this is the unusual case in which the very court that Abramowitz sought to deceive has discovered his attempted deception, concluded that he attempted litigation fraud, and taken the rare and extraordinary step of filing a criminal complaint regarding his conduct, and Abramowitz himself has claimed that he acted with the assistance of Williams & Connolly.  *See* German Court's Criminal Complaint at 2–3; Kämpfer Decl., ¶ 13.  Palantir's Application simply asks this Court to apply the privilege exception that results when a court so finds prima facie evidence of a crime or fraud that has been perpetrated with the assistance of counsel.  *See Duttle v. Bandler & Kass*, 127 F.R.D. 46, 53 (S.D.N.Y. 1989) (considering fact that company's principals were convicted of fraud in Germany as evidence supporting the application of crime-fraud exception to company's communications with attorneys).

Accordingly, privilege does not prevent the production of the discovery Palantir seeks, which should be granted for the reasons set forth in this Application.

## V.    CONCLUSION

For the reasons set forth above, Palantir respectfully requests that this Court (i) grant this Application for Discovery Pursuant to 28 U.S.C. § 1782 with respect to the documents and

testimony requested herein and in Exhibit D, (ii) order Abramowitz to produce said documents within 14 days of service of the subpoena and appear for a three-and-a-half-hour deposition thereafter; and (iii) grant such other and further relief as the Court deems just and proper.

April 5, 2022

> SHOEMAKER GHISELLI + SCHWARTZ LLC
>
> By:    _/s/ Paul H. Schwartz_
> Paul H. Schwartz
> Daniel Jozwiak
> 1811 Pearl Street
> Boulder, CO 80302
> (303) 530-3452
> pschwartz@sgslitigation.com
> djozwiak@sgslitigation.com
>
> FRESHFIELDS BRUCKHAUS DERINGER US LLP
> David Y. Livshiz
> Olivia P. Greene
> Wang Jae Rhee
> Robert G. M. Barton
> 601 Lexington Ave., Fl. 31
> New York, New York 10022
> (212) 277-4000
> david.livshiz@freshfields.com
> olivia.greene@freshfields.com
> wangjae.rhee@freshfields.com
> robert.barton@freshfields.com
>
> *Attorneys for Applicant Palantir Technologies Inc.*