IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 22-mc-00062-PAB

In re Application of PALANTIR TECHNOLOGIES INC.
for an Order Pursuant to 28 U.S.C. § 1782 to Obtain
Discovery for Use in Foreign Proceedings.

---

**ORDER ON
APPLICATION FOR ORDER TO OBTAIN DISCOVERY
PURSUANT TO 28 U.S.C. § 1782
(Dkt. #1)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

### INTRODUCTION

This matter comes before the Court on Palantir Technologies, Inc.'s ("Palantir") Application and Petition for an Order Pursuant to 28 U.S.C. § 1782 to Obtain Discovery for Use in Foreign Proceedings (the "Application"). Dkt. #1. Specifically, Palantir seeks permission under 28 U.S.C. § 1782 to take the deposition of Marc L. Abramowitz ("Mr. Abramowitz") and to issue a subpoena for attorney-client privileged (and work product) documents from Mr. Abramowitz and his counsel going back nearly six years, purportedly for use in criminal and civil proceedings taking place in Germany. The matter was assigned to Judge Brimmer, who then referred the Application to me. *See* Dkt. #9. I heard argument by the Parties on the issues raised by Palantir's Application on May 25, 2022. At the hearing I directed Mr. Abramowitz's counsel to submit two of the disputed and arguably privileged documents for in camera review.

Now, being fully informed and for the reasons set forth below, the Court, in the exercise of its discretion, **ORDERS** that the application is **DENIED**.

**Applications under 28 U.S.C. § 1782**

Section 1782(a) of Title 28 of the United States Code provides, in pertinent part, that the "district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation." The threshold statutory requirements of § 1782(a) are met when "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 83 (2d Cir. 2004) (ellipses and internal quotation marks omitted).

Meeting the statutory prerequisites, however, is not the end of the inquiry. The Court retains discretion over whether to permit the requested discovery. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 260 (2004).

**FACTUAL BACKGROUND**

The factual background of Palantir's application is convoluted, to say the least. Palantir and Mr. Abramowitz have been involved in multiple lawsuits in various venues across the country and the world. This application is an offshoot of one of those lawsuits—a German proceeding where Palantir seeks to challenge Mr. Abramowitz's German patent applications.

Palantir is a public American software company that specializes in "big data" analytics. It is based in Denver, Colorado. Mr. Abramowitz, an Aspen, Colorado resident, was one of Palantir's first outside investors. The relationship between Palantir

2

and Mr. Abramowitz soured in 2015, after Mr. Abramowitz had filed provisional United States patent applications in late 2014. Palantir accused Mr. Abramowitz of stealing Palantir's ideas and using them to file his patent applications.

In September 2016, Palantir filed an interference proceeding with the United States Patent and Trademark Office. The company also filed a misappropriation lawsuit in California against Mr. Abramowitz. In that suit, Palantir alleges that Mr. Abramowitz's patent applications were based on Palantir's trade secrets. Specifically, Palantir claims that during a June 10, 2014, meeting, Palantir executive Shyam Sankar ("Mr. Sankar") disclosed the details of Palantir's cybersecurity and cyber insurance trade secrets to Mr. Abramowitz. As described in more detail below, that meeting, and whether Mr. Abramowitz remembers any of it, are at the heart of Palantir's current application.

In addition to the lawsuits stemming from Mr. Abramowitz's patent applications, Palantir and Mr. Abramowitz were (or are) involved in two cases in Delaware. First, Mr. Abramowitz sued to vindicate his right as an investor to obtain information about the company under Delaware's books and records statute. Next, Mr. Abramowitz brought a second Delaware lawsuit to seek recompense for alleged interference by Palantir in the sale of Mr. Abramowitz's stock to a third party. This second Delaware lawsuit between Mr. Abramowitz and Palantir is set to go to trial in July of this year.

In September 2018, after two years of litigation in California, Palantir filed a patent-entitlement action against Mr. Abramowitz in Germany. In that German action, Palantir seeks a declaration that Mr. Abramowitz's foreign patent applications were based on Palantir's ideas. Just as in the California case, Palantir's complaint in the German suit asserts that Mr. Abramowitz's cyber insurance ideas were obtained and

derived from the June 10, 2014 meeting with Mr. Sankar. As Palantir asserts in its pending application for discovery: "While Abramowitz's [German patent] applications claim that he is responsible for the technological innovation underlying the Cyber Patents, the patents are based on proprietary information that Abramowitz stole from Palantir." Dkt. #1 at 6.

### Disputed Recollections about the June 2014 Meeting Perplex the German Court

Mr. Abramowitz has already been deposed in these various litigations, including specifically about the June 2014 meeting with Mr. Sankar. For example, in May 2017 deposition testimony in the Delaware books and records case, Mr. Abramowitz said that he remembered meeting Mr. Sankar once "to say hello," but did not know why they had been introduced. Dkt. #1-15 at 4. Palantir again deposed Mr. Abramowitz in one of the U.S. cases in October 2020, while the German case was pending. During that deposition, Mr. Abramowitz repeated essentially the same testimony: he remembered "meeting Shyam once standing in the doorway of his office saying hello." Dkt. #1-15 at 5. With respect to the whether a supposed "meeting" occurred, or what was discussed, Mr. Abramowitz, testified that he had "no recollection." *Id.*

But problems arose with Mr. Abramowitz's submissions to the German court. Palantir in its complaint and briefs alleged with great specificity what happened at the June 2014 meeting between Mr. Abramowitz and Mr. Sankar. In his response to these specific allegations, Mr. Abramowitz, in pleadings drafted in German by his German counsel, appears to have denied them to a level of detail that caused confusion, at least in the mind of the German court. The German pleading denials were so specific as to

suggest that Mr. Abramowitz actually remembered the conversation, including its length, and "what it was or was not about." Dkt. #1-13 at 2.

And indeed, this was the German court's conclusion. In the German court's view, Mr. Abramowitz's pleadings "expressly rul[ed] out the communication of certain details by Mr. Sankar to the Defendant in the course of the conversation." *Id*. In other words, per the German court's impression, the pleadings submitted by Mr. Abramowitz's German counsel conveyed the impression that Mr. Abramowitz in fact had an affirmative recollection of the alleged conversation and could affirmatively relate that he specifically remembered that no technical details were provided. By contrast, his testimony in the American proceedings stated merely that Mr. Abramowitz did not remember the conversation.

On July 29, 2021, the German Court issued an order that it would be set an evidentiary hearing, during which the court expected to question Mr. Abramowitz regarding his recollection of the June 2014 conversation between Mr. Sankar and Mr. Abramowitz. *Id*.

On October 21, 2021, the German court held the anticipated hearing. Mr. Abramowitz was present. In the meantime, the German court had been provided by Palantir with a copy of Mr. Abramowitz's American deposition testimony where he had testified that he did not remember the meeting of June 10, 2014. Perplexed by Mr. Abramowitz's seeming affirmative recollection of the meeting in his German pleadings but his denial of any recollection about the meeting in his American deposition testimony, the German court found that the parties' respective submissions were irreconcilable. Further, the court warned that because Mr. Abramowitz was not

domiciled in Germany (and presumably could flee the jurisdiction), measures might

have to be taken to keep him from absconding if his testimony were found to be false:

> The Chamber points out that, according to the order to take evidence, irreconcilable statements by the parties are at issue and, on this basis, suggests that the legal dispute be resolved in such a way that a taking of evidence and thus possible false statements can be avoided. In this context, the Chamber expresses its concern that neither the witnesses nor the defendant to be heard as a party are domiciled in Germany and that, therefore, in the event of a criminal offence being committed in Germany - such as an offence of giving evidence or an attempted trial fraud - there is a risk of absconding and that the Chamber is prepared to initiate the necessary measures in the event of any suspicious facts.

Dkt. #1-9 at 4, Courtroom Minutes of October 21, 2021 Hearing.

After a short interruption, during which time Mr. Abramowitz's German counsel

spoke with Mr. Abramowitz, Mr. Abramowitz's German counsel returned to explain to

the German court that he had learned "in the last few days" that Mr. Abramowitz, in fact,

"could not remember the conversation of 10 June 2014 and therefore would not be able

to make any statement as to the content of the conversation." Dkt. #1-13 at 3. This

came as a surprise to the German court.

The German court's inquiry then turned to the question of how the German

pleadings (which arguably suggested an affirmative recollection by Mr. Abramowitz) had

been prepared. Mr. Abramowitz's German counsel answered questions from the

German court about whether Mr. Abramowitz had been aware of the German pleadings

and whether his American lawyers had approved them:

> In response to a question from the court, [Mr. Abramowitz's German lawyer] stated that Mr. Abramowitz had been informed by his US lawyers of the pleadings submitted in these proceedings. The pleadings had been forwarded to the US lawyers before being filed with the court. Before the pleadings were submitted to the court, the US lawyers then issued their approval for them to be submitted. The defendants' representatives

themselves, however, had no concrete knowledge of whether Mr. Abramowitz had also read the pleadings.

[Mr. Abramowitz's] representative further states that even if Mr. Abramowitz does not remember the content of the conversation of 10 June 2014, he is certain that he did not receive any concrete technical information on the subject matter of the application from the plaintiff's side at any time until the filing of the applications at issue.

Dkt. #1-9 at 4.

The German court then called Mr. Abramowitz to testify regarding the genesis of

the earlier submissions in the German proceeding. Although here is no word-for-word

transcript of the testimony, the courtroom minutes reflect that Mr. Abramowitz answered

questions as follows:

I have read the translations of the pleadings that my attorneys have filed in this litigation. I have not, however, studied them. First, I had the pleadings in German and then the translations. I only read the translations. It was difficult for me to follow the translations.

My US lawyers have asked me to approve the pleadings as being correct. After consultation with my U.S. attorneys, I have approved the pleadings as being correct. The US lawyers consulted with the German lawyers on the content of the pleadings. I relied on my US lawyers, as they know the facts.

Telephone and video conferences have taken place in which I, my US lawyers and also the German lawyers have participated. One of the purposes of the conferences was to confirm the accuracy of the contents of the pleadings. I do not specifically recall the passages of the pleadings in which I was personally offered as a party to be heard to substantiate certain facts and procedures. I'm not surprised, though.

*Id.* at 5.

So, from the German court's perspective, it appeared Mr. Abramowitz had

affirmatively represented in German pleadings a recollection of the June 10, 2014

meeting, while in American proceedings, he denied any recollection. And then, when

Mr. Abramowitz prepared to testify in German court, he again denied any recollection.

Based on this series of events, along with Mr. Abramowitz's admissions that he had reviewed the German pleadings prior to their filing in conjunction with his American lawyers, coupled with his German lawyer's statement that he had only learned *a few days before* of Mr. Abramowitz's claimed lack of recollection, the German court concluded that Mr. Abramowitz had tried to mislead the German court and had engaged in "attempted litigation fraud." After considering the matter post hearing, the German court submitted a criminal complaint to the Munich Public Prosecutor's Office for further action on December 15, 2021. *See* Dkt. #1-13, Order of December 15, 2021 issuing Criminal Complaint. A criminal investigation into Mr. Abramowitz's alleged litigation fraud was opened.

German law provides that if a defendant is found to have committed attempted litigation fraud intentionally in a "particularly serious case" (meaning aggravating circumstances), the result could be a prison sentence of six months to ten years. Dkt. #1-16 at 3, ¶ 8.

**Palantir's Criminal Complaint against Mr. Abramowitz and his American Attorneys**

On November 2, 2021, before the German court had issued its criminal complaint, Palantir filed its own criminal complaint against Mr. Abramowitz *and* his American lawyers, Barry Simon and Stephen L. Wohlgemuth of Williams & Connolly (the "W&C Lawyers"). Dkt. #1-16 at 2, ¶ 5. Palantir's criminal complaint was also filed with the Munich Public Prosecutor's Office for attempted litigation fraud in a particularly serious case and for aiding and abetting attempted litigation fraud in a particularly serious case. In response to Palantir's criminal complaint, the Public Prosecutor opened a criminal investigation in November 2021. *Id*. at 3, ¶ 7.

Palantir's criminal complaint foreshadowed the German court's complaint by alleging that Mr. Abramowitz committed attempted litigation fraud by knowingly and willfully lying during a proceeding before the German court to influence the outcome of the litigation in his favor. The allegation, again, is that in the American deposition, Mr. Abramowitz swore that he did not have any recollection *at all* of a June 2014 meeting (neither with regard to its content, nor whether the meeting took place). Palantir argues that this is a direct contradiction to Mr. Abramowitz's statements before the German court in which he claimed that he had recollections of the June 10, 2014 meeting and could dispute and precisely state what had and had (allegedly) not happened in that meeting. *Id.* at 4, ¶ 9.

Palantir's purported basis for initiating a criminal complaint against Mr. Abramowitz's W&C Lawyers is that they had been appointed "special correspondence counsel" for the German patent litigation and were closely involved in the preparation of the pleadings in the German patent litigation. The W&C Lawyers' participation in the filing of a "contradictory pleading in Germany only one week after Mr. Abramowitz's deposition," in Palantir's view, "supports Palantir's allegation that [the W&C Lawyers] participated as accomplices in the attempted litigation fraud." *Id.* at 4–5, ¶ 10. Further, because the W&C Lawyers participated in Mr. Abramowitz's deposition in the United States, Palantir argues they must have known, from the deposition and the transcript, that Mr. Abramowitz had made (allegedly) contradictory statements about the same meeting in the two jurisdictions. *Id.*

**Mr. Abramowitz's German Counsel Falls on His Sword**

Important to the German court's referral to the Munich Public Prosecutor was Mr. Abramowitz's German counsel's statement that he had learned about Mr. Abramowitz's claimed lack of recollection of the June 2014 meeting, only *a few days before* the October 21, 2021 German evidentiary hearing. This revelation supported the German court's conclusion that Mr. Abramowitz had misled his own German counsel into filing false pleadings.

But Mr. Abramowitz's German counsel has now admitted to making a mistake. In a "Personal Statement" contained in a brief filed with the German court on March 28, 2022, Mr. Abramowitz's German counsel conceded that he had been informed by Mr. Abramowitz's the W&C Lawyers in writing on October 7, 2019, that Mr. Abramowitz "had already testified to having no recollection of the meeting on 10 June 2014." Dkt. #1-15 at 3. German counsel further explained that this was "repeated in writing on 3 October 2020, a few days before the Quadruplica [a form of brief] was filed. Thus, this fact was known to [German counsel] at the time and there was no information to the contrary at any time from the [W&C Lawyers] or [Mr. Abramowitz]." *Id*. So, German counsel clarified to the German court that his representation at the October 21, 2021 hearing, that he had only learned "in the last few days before the hearing" about Mr. Abramowitz's lack of recollection, was "unintentionally incorrect." *Id*.

As to the propriety of the written German pleadings where Mr. Abramowitz denied specific allegations of receiving detailed technical information at the June 2014 meeting with Mr. Sankar, Mr. Abramowitz's German counsel nevertheless maintains that the written submissions were "procedurally admissible and appropriate." *Id.* This is

because Mr. Abramowitz's denial that he received detailed information about the conception of the disputed invention during the June 2014 meeting is not necessarily inconsistent with a lack of recollection of the meeting. After all, other independent evidence could form the basis of a denial found in a pleading, notwithstanding the lack of a party's recollection. Mr. Abramowitz's German counsel did express regret for creating the any misimpression: "Inasmuch as the Chamber has gained the impression that our submission implied a recollection of the further circumstances of the meeting, we regret that such an impression has been created." Dkt. #1-15 at 3.

The day after filing his Personal Statement, Mr. Abramowitz's German counsel informed the German court he was no longer representing Mr. Abramowitz in the German patent proceedings and new counsel announced her representation. Dkt. #1-2 at 10, ¶ 31, Decl. of Wolrad Prinz Zu Waldeck Und Pyrmont.

**Palantir Seeks Privileged Communications and Work Product**

In aid of the ongoing criminal investigations in Germany, Palantir now seeks to take another deposition of Mr. Abramowitz regarding his recollection (or lack thereof) of the June 2014 meeting as well as his review and approval of the German pleadings. Palantir also asks for discovery from the files of the W&C Lawyers, seeking attorney-client privileged documents going back nearly six years. The subject of the proposed discovery is what Palantir calls the "core topic" of the German criminal proceedings: "Abramowitz's review and approval of filings made to the German Court concerning the June 10[, 2014] Meeting, and his preparation for the Evidentiary Hearing." Dkt. #1 at 14. In conjunction with a deposition of Mr. Abramowitz, the proposed subpoena seeks the following categories of documents:

1.      All Documents and Communications concerning the June 10 Meeting exchanged between Abramowitz and Williams & Connolly and between Abramowitz and Hoffmann Eitle [Mr. Abramowitz's German counsel], from June 10, 2014 to the present.

2.      All Documents and Communications concerning Abramowitz's recollection of the June 10 Meeting, from June 10, 2014 to the present.

3.      All Documents and Communications concerning Abramowitz's preparation to provide testimony in connection with the German Patent Litigation or in the Delaware Deposition concerning his recollection of the June 10 Meeting.

4.      All drafts of the Relevant Paragraphs reviewed by Abramowitz.

5.      All Documents and Communications concerning the Relevant Paragraphs exchanged between Abramowitz and Williams & Connolly and between Abramowitz and Hoffmann Eitle, including, without limitation, all drafts of the Relevant Paragraphs reviewed by Williams & Connolly, Hoffmann Eitle, or Abramowitz, including, without limitation, any markups or revisions thereof prepared by Williams & Connolly, Hoffmann Eitle, or Abramowitz.

6.      All Documents supporting, underlying, or relating to Abramowitz's statements about the June 10 Meeting in the Relevant Paragraphs and in the Oral Statements, from June 10, 2014 to the present.

7.      All Documents evidencing, supporting, or concerning Abramowitz's Oral
Statement during the German Patent Litigation: "I relied on my US lawyers, as they know the facts."

8.      All Communications referenced in paragraph 4 of Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief, and all Documents evidencing, supporting, or relating to the statements in paragraph 4 of Abramowitz's Mar. 28, 2022 Reply to Plaintiff's Brief.

Dkt. #1-23 at 4–8, Proposed Subpoena.

Palantir concedes that the proposed subpoena calls for the production of

attorney-client privileged material. It also obviously calls for the production of attorney

work product. *See* Dkt. #1 at 21 (implicitly recognizing that "the requested discovery incudes information and documents that would ordinarily be protected by privilege").

Palantir makes two main arguments for compelling production of what would otherwise be privileged materials. Initially, Palantir asserts that Mr. Abramowitz has waived attorney-client and work product privilege as to his communications with his attorneys about the June 2014 meeting under the "sword-shield" or "advice-of-counsel" doctrine. Palantir argues that this happened at least three times. First, waiver allegedly occurred when, in response direct questions from the German court, Mr. Abramowitz stated, "after consultation with my U.S. attorneys, I have approved the [German] pleadings as being correct. The US lawyers consulted with the German lawyers on the content of the pleadings. *I relied on my US lawyers*, as they know the facts." *Id.* at 22 (emphasis in original) (citing Dkt. #1-9 at 4).

Second, Palantir argues that there was some kind of waiver when Mr. Abramowitz, in the pending Delaware action, filed a motion in limine seeking to exclude from the Delaware trial any reference to the German patent litigation, suggesting, in part that any mistakes in his German filings were the result of faulty translations of the draft German proceedings.

And third, Palantir claims that the brief including Mr. Abramowitz's German counsel's Personal Statement waives the privilege because this "submission references supposed written communications between Mr. Abramowitz's U.S. and German attorneys to defend Mr. Abramowitz's inconsistent statements, but it does not attach these communications or directly cite from them; it also asserts that 'there was no information to the contrary at any time from the [W&C Lawyers] or [Mr. Abramowitz].'"

Dkt. #1 at 22. Palantir argues that neither Palantir nor the German Court can evaluate Mr. Abramowitz's arguments without reviewing the referenced alleged communications and draft filings, as well as other communications among Mr. Abramowitz and his counsel on the subject. *Id*. at 22–23.

Beyond waiver, Palantir argues that the crime-fraud exception applies because the communications that Palantir seeks to discover between Mr. Abramowitz and his counsel were made in furtherance of a crime or fraud. *Id.* at 24. Citing the Tenth Circuit's decision in *In re Grand Jury Subpoenas*, 144 F.3d 653 (10th Cir. 1988), Palantir argues that it has put forth prima facie evidence of W&C Lawyers' participation in a crime or a fraud because the German court has already issued an order concluding that Mr. Abramowitz "attempted litigation fraud" to "induce the Chamber to make a decision in his favor (dismissal of the action) by authorizing his attorneys to submit briefs in which he claimed to have a recollection of the June 10[, 2014] meeting, despite testifying under oath in the Delaware action that he had no recollection of the meeting." Dkt. #1 at 15. Palantir argues that there can be no doubt as to the role of the W&C Lawyers in the alleged misconduct because Mr. Abramowitz himself "testified that he relied on [the W&C Lawyers] to prepare the offending submissions and to confirm the accuracy of the facts contained therein." *Id.* at 25.

Palantir does not rest exclusively on the German court's conclusions. Instead, it "invites [this] Court to make its own determination after reviewing evidence of Abramowitz's conflicting statements and reach a prima facie determination." Dkt. #1 at 25. I accept this invitation.

## LEGAL STANDARDS

**Protection of Privileged Documents**

Even if all the statutory requirements are met, whether to permit discovery under 28 U.S.C. § 1782 remains within the discretion of the Court. *Intel Corp.*, 542 U.S. at 260; *see also Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218 (11th Cir. 2019) ("When these statutory requirements are satisfied, a district court is authorized—but not required—to provide judicial assistance to the applicant.").

The Supreme Court has enumerated certain non-exclusive factors for a court to consider when deciding whether to permit discovery pursuant to § 1782: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent § 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome. *Intel*, 542 U.S. at 264–65.

Discovery requests under § 1782 are evaluated in light of the "twin aims" of the statute": (1) "providing efficient means of assistance to participants in international litigation in our federal courts" and (2) "encouraging foreign countries by example to provide similar means of assistance to our courts." *In re Application of Michael Wilson & Partners, Ltd.*, No. 06–cv–02575–MSK– PAC (MEH), 2007 WL 2221438, at *3 (D. Colo. July 27, 2007) (quoting *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

But a critical underlying point is that the discovery available under § 1782 should not exceed that which would be normally available under the Federal Rules of Civil Procedure. *See* 28 U.S.C. § 1782(a) (noting that the "testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure"). Thus, even assuming that the statutory requirements are met and certain of the discretionary factors listed by the Supreme Court in *Intel* would militate in favor of allowing discovery, discovery should not be permitted under § 1782 if the requested discovery would not normally be available under the Federal Rules of Civil Procedure in an American proceeding. *See Heraeus Kulzer, GMBH v. Biomet, Inc.*, 633 F.3d 591, 595 (7th Cir. 2011) ("As indicated in one of the passages we quoted from the statute, discovery sought under section 1782 must (in the absence of a contrary order by the district court) comply with Rule 26 and the other rules governing discovery in federal courts."). In this respect, the final *Intel* discretionary factors of undue intrusiveness or undue burden overlap to some degree with the limits on discovery imposed by the Rules. *See, e.g.,* Fed. R. Civ. P. 26 (b)(1) (discovery must be proportional to the need of the case, considering, among other things, the importance of the issues at stake in the action, the amount in controversy, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit); Fed. R. Civ. P. 26 (c)(1) (party may move for protective order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense); Fed. R. Civ. P. 45(d)(3)(A)(iii) and (iv) (directing court to quash or modify subpoena if it requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden).

Importantly, the statute itself is emphatic that it is not to be used to compel testimony or procure evidence that would infringe or violate any privilege: "A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege." 28 U.S.C. §1782(a); *see also Baumer v. Schmidt*, 423 F. Supp. 3d 393, 398 (E.D. Mich. 2019) (noting that "[a]ny and all . . . limitations upon discovery that would be available under Fed. R. Civ. P. 26 (particularly subparagraphs (b) and (c)), pertaining both to privileged and trial preparation matters and to protective orders, are also available under section 1782(a)" (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 n.4 (2d Cir. 1995))); *In re Microsoft Corp.*, 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006) (explaining that a discovery request under § 1782 could be deemed unduly intrusive and burdensome where it seeks documents that are privileged under U.S. law, including work product privilege).

### The Crime-Fraud Exception

"It is the purpose of the crime-fraud exception to the attorney-client privilege to assure that the 'seal of secrecy,' between lawyer and client does not extend to communications 'made for the purpose of getting advice for the commission of a fraud' or crime." *United States v. Zolin*, 491 U.S. 554, 563 (1989) (internal citations omitted). The crime-fraud exception applies to both the attorney-client privilege and the work-product doctrine. *In re Vargas*, 723 F.2d 1461, 1467 (10th Cir. 1983).

To invoke the crime-fraud exception, the party opposing the privilege must present prima facie evidence that the allegation of attorney participation in the crime or fraud has "some foundation in fact." *In re Grand Jury Subpoenas*, 144 F.3d at 660;

*Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995). The evidence must show that the client was engaged in or was planning the criminal or fraudulent conduct when it sought the assistance of counsel, and that the assistance was obtained in furtherance of the conduct or was closely related to it. *In re Grand Jury Subpoenas,* 144 F.3d at 660. The exception applies if the assistance was used to cover up and perpetuate the crime or fraud. *Id.*; *see also In re Grand Jury Proceedings (Company X)*, 857 F.2d 710, 712 (10th Cir. 1988); *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995) (noting that exception applies where "communication with counsel or attorney work product was intended in some way to facilitate or to conceal the criminal activity").

The Tenth Circuit has noted that the exact quantum of proof necessary to meet the prima facie standard has not been decided by the Supreme Court. *In re Grand Jury Subpoenas*, 144 F.3d at 660 (citing *Zolin*, 491 U.S. at 563–64 n.7). But as the Tenth Circuit also explained, several circuits have attempted to define precisely what the standard requires and established varying tests. *Id.* (citing *In re Richard Roe, Inc.*, 68 F.3d at 40 (probable cause to believe a crime or fraud has been committed); *Haines v. Liggett Group Inc.*, 975 F.2d 81, 95–96 (3d Cir. 1992) (evidence that if believed by the fact finder would be sufficient to support a finding that the elements of the crime-fraud exception were met); *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1242 (5th Cir. 1982) (evidence such as will suffice until contradicted and overcome by other evidence); *United States v. Davis*, 1 F.3d 606, 609 (7th Cir. 1993) (evidence presented by the party seeking application of the exception is sufficient to require the party asserting the privilege to come forward with its own evidence to support the privilege); *In re Grand Jury Proceedings (Appeal of Corporation)*, 87 F.3d 377, 381 (9th Cir. 1996)

(reasonable cause to believe attorney was used in furtherance of ongoing scheme); *In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1226 (11th Cir. 1987) (evidence that if believed by the trier of fact would establish the elements of some violation that was ongoing or about to be committed); *In re Sealed Case*, 107 F.3d 46, 50 (D.C. Cir. 1997) (evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud)). Interpreting Kansas law, a sister federal district court in the Tenth Circuit defined a prima facie case sufficient to justify application of the crime-fraud exception as: "evidence which, if left unexplained or uncontradicted, would be sufficient to carry the case to the jury and sustain a verdict in favor of the plaintiff on the issue it supports." *Berroth v. Kan. Farm Bureau Mut. Ins. Co., Inc.*, 205 F.R.D. 586, 589 (D. Kan. 2002).

Even if there is an arguable prima facie showing that the crime-fraud exception might apply, the district court is entitled to conduct an in camera review to determine the applicability of the crime fraud exception. *Motley*, 71 F.3d at 1551–52 (citing *Zolin*, 491 U.S. at 575–76 (1989)). Whether to conduct an in camera review is left to the sound discretion of the district court. *Id.* And, a court nevertheless is required to conduct an in camera review if there is a possibility that some portion of a requested document may fall outside the scope of the exception to the privilege. *In re Vargas*, 723 F.2d at 1467.

### Waiver of the Attorney-Client Privilege

The importance and sanctity of the attorney-client privilege is well established. *In re Grand Jury Subpoenas*, 144 F.3d at 659–60. Generally, communications between a lawyer and the lawyer's client for the purpose of obtaining legal advice is a privileged communication which is protected by the legal process. *See Upjohn Co. v. United*

*States*, 449 U.S. 383, 389 (1981); Fed. R. Civ. P. 26(b)(1) (limiting discovery to any

matter "not privileged"). But the attorney-client privilege is not an absolute privilege and

may be waived by the client. "Any waiver must be demonstrated by evidence that the

client, by words or conduct, has expressly or impliedly forsaken his or her claim of

confidentiality with respect to the information in question and, thus, has consented to its

disclosure." *Am. Economy Ins. Co. v. Schoolcraft*, No. 05-cv-01870-LTB-BNB, 2007 WL

1229308, at *3 (D. Colo. 2007) (quoting *People v. Sickich*, 935 P.2d 70, 73 (Colo. App.

1996)).

As explained by the Tenth Circuit in *Frontier Refining, Inc. v. Gorman-Rupp Co.,*

*Inc.,* 136 F.3d 695 (10th Cir. 1998), to determine whether a privilege has been impliedly

waived, courts generally employ some version of one of the three following approaches:

> The first of these general approaches is the "automatic waiver" rule, which
> provides that a litigant automatically waives the privilege upon assertion of
> a claim, counterclaim, or affirmative defense that raises as an issue a matter
> to which otherwise privileged material is relevant. S*ee Independent Prods.
> Corp. v. Loew's Inc.*, 22 F.R.D. 266, 276–77 (S.D.N.Y. 1958) (originating
> "automatic waiver" rule); *see also FDIC v. Wise*, 139 F.R.D. 168, 170–71
> (D. Colo. 1991) (discussing *Independent Productions* and "automatic
> waiver" rule). The second set of generalized approaches provides that the
> privilege is waived only when the material to be discovered is both relevant
> to the issues raised in the case and either vital or necessary to the opposing
> party's defense of the case. *See Black Panther Party v. Smith*, 661 F.2d
> 1243, 1266–68 (D.C. Cir.1981) (balancing need for discovery with
> importance of privilege), *vacated without opinion*, 458 U.S. 1118, 102 S. Ct.
> 3505, 73 L. Ed. 2d 1381 (1982); *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.
> Wash. 1975) (setting forth three-factor test, which includes relevance and
> vitality prongs). Finally, several courts have recently concluded that a litigant
> waives the attorney-client privilege if, and only if, the litigant directly puts the
> attorney's advice at issue in the litigation. *See, e.g., Rhone–Poulenc Rorer
> Inc. v. Home Indem. Co*, 32 F.3d 851, 863–64 (3d Cir.1994) (adopting
> restrictive test and criticizing more liberal views of waiver).

*Id*. at 699–700. In predicting what the Wyoming Supreme Court would do, the Tenth

Circuit rejected the "automatic waiver" rule as not adequately accounting for the

importance of the attorney-client privilege to the adversary system. *Id.* at 700–01.

Instead, the Tenth Circuit applied the "widely cited" test articulated in *Hearn*. Under the

*Hearn* test, each of the following three conditions must exist to find waiver of the

attorney-client privilege:

> (1) assertion of the privilege was the result of some affirmative act, such as
> filing suit, by the asserting party; (2) through this affirmative act, the
> asserting party put the protected information at issue by making it relevant
> to the case; *and* (3) application of the privilege would have denied the
> opposing party access to information vital to [its] defense.

*Id.* at 701 (emphasis in original) (quoting *Hearn*, 68 F.R.D. at 581); *see also Cardtoons,*

*L.C. v. Major League Baseball Players Assoc.*, 199 F.R.D. 677 (N.D. Okla. 2004) (citing

test articulated in *Hearn*); *Seneca Ins. Co., Inc. v. Western Claims, Inc.*, 774 F.3d 1272,

1276 (10th Cir. 2014) (applying *Hearn* test to predict how the Oklahoma Supreme Court

would address "at-issue" waiver of the attorney-client privilege).

The "affirmative act" requirement is more than merely responding to a question

from the court or opposing counsel. Merely stating, in response to questions posed by

opposing counsel, that a lawyer participated in formulating a response or provided

advice regarding a certain course of action, does not constitute a waiver of the attorney-

client privilege. *See Oil, Chem. & Atomic Workers International Union (OCAW) v.*

*Sinclair Oil Corp.*, 748 P.2d 283 (Wyo. 1987).

In a discussion regarding the attorney work product doctrine, the *Frontier*

*Refining* decision also addresses the "sword-shield" doctrine which may result in a

waiver of the privilege. A litigant cannot use a privilege such as the work product

doctrine "as both a sword and a shield by selectively using the privileged document to

prove a point but then invoking the privilege to prevent an opponent from challenging the assertion." 136 F.3d at 704.

## ANALYSIS

### The Crime-Fraud Exception Does Not Apply

I accept Palantir's invitation to analyze Mr. Abramowitz's submissions in the German court for prima facie evidence that he and his lawyers committed criminal conduct. I find there is none.

As evidence of Mr. Abramowitz's specific denials about what happened at the June 2014 meeting, and the supposed affirmative (allegedly criminal) representations of his "recollection," Palantir, through the declaration of Mr. Prinz Zu Waldeck Und Pyrmont (at Dkt. #1-2 at 4), cites the following paragraphs from documents filed by Mr. Abramowitz's German counsel:[1]

- Abramowitz's Response to Complaint of 20 November 2019 (Dkt. #1-4), paragraphs 136–137.

These paragraphs include the statement, "The unsubstantiated assertions in section C.11.3 of the Complaint (page 20), *i.e.* that in this meeting Mr. Sankar also

---

[1] The cited paragraphs are the *only* paragraphs that Palantir points to as being the basis for a criminal attempt to mislead the German court. And, it must be noted, Mr. Abramowitz's submissions to the German court were both lengthy and dense. For example, Mr. Abramowitz's Response to Palantir's German complaint (Dkt. #1-4) runs 44 pages and 159 single-spaced paragraphs of material translated into English from the original German. The Rejoinder of 7 August 2020 (Dkt. #1-5), consists of 73 pages and 316 paragraphs of translated material. And the Quadruplica brief of October 6, 2020 (Dkt. #1-6) runs another 22 pages and 92 paragraphs of dense, translated material. Thus, Mr. Abramowitz's German counsel submitted at least 139 pages of material consisting of 567 fact-intensive, legally complicated paragraphs, all of which had been translated from the German for Mr. Abramowitz and his American lawyers to review. So, when Mr. Abramowitz testified to the German court that he had "read" the pleadings, but not "studied them," and that "it was difficult [for him] to follow the translations," the statement rings true.

explained 'all of the aspects later incorporated by Defendant into the Applications in Suit' which then are listed there below, are incorrect and are <u>denied</u>." Dkt. #1-4 at 40 (emphasis in original).

As to this statement, I find that a mere denial of an adversary's allegation is not an affirmative statement of Mr. Abramowitz's recollection of the meeting, especially when there is an independent basis for denying an allegation (which, as set forth below, there was in this case).

- <u>Abramowitz's Rejoinder of 7 August 2020 (Dkt. #1-5), paragraphs 16, 133–134, and 270.</u>

Paragraph 16 of this document reads in relevant part, "In any event, CyberMesh could no longer be considered confidential information at the time of the conversation between Mr. Sankar and Defendant on 10 June 2014, during which Plaintiff asserts to have reported on this development, which Defendant <u>denies</u>." Dkt. #1-5 at 8 (emphasis in original).

This too, is another mere denial, rather than an affirmative representation of recollection.

Paragraph 133 of the Rejoinder reads, "Defendant <u>denies</u> that details of the Applications in Suit were communicated to him in this discussion." *Id.* at 35 (emphasis in original). Again, a mere denial is not an affirmative representation of a recollection.

Paragraph 134 of the Rejoinder does request that, in the event the German court were to take evidence from Mr. Sankar about the "one-on-one meeting," "out of precaution," Mr. Abramowitz also be heard "since both parties must be given an equivalent opportunity to present their case." *Id.* at 35. Nevertheless, this paragraph makes no affirmative statement about Mr. Abramowitz's recollection, but merely asks for

the opportunity to be heard, perhaps to testify about why, even the absence of a specific recollection, it would have made no sense for Mr. Sankar to disclose company secrets to Mr. Abramowitz, or why, if technical information actually had been communicated during such a meeting, Mr. Abramowitz would have remembered it.

Paragraph 270 of the Rejoinder similarly makes no affirmative statements of recollection: "Regarding Plaintiff's alleged communication to Defendant, the submissions lack sufficient substantiation to be commented on. Defendant <u>denies</u> that the teachings of the Applications in Suit were communicated to him by Mr. Sankar." *Id.* at 64 (emphasis in original).

- <u>Quadruplica [form of brief] of 6 October 2020 (Dkt. #1-6)</u>, paragraphs 1–2, 12, 44, and 55–59.

Paragraph 1 of this document is just a more expansive denial of what allegedly happened at the June 10, 2014 meeting:

> Plaintiff's new and clearly expanded submissions regarding its alleged conception of the invention and regarding that which it claims to have communicated in a conversation which lasted 90 minutes at the most to Defendant, who it believes lacks sufficient technical skill, are not only late filed but are also rejected on the merits. This allegation, which is not supported by any written records, has become (increasingly) incredible, and the only witness is not trustworthy as a result of previous transgressions (which have been admitted by Plaintiff or resolved by settlement).

Dkt. #1-6 at 4. Again, there is no specific allegation of any affirmative recollection by Mr. Abramowitz in this paragraph.

Neither does paragraph 2 make any affirmative representation, as opposed to a general denial: "Even if there had been a communication by Plaintiff to Defendant (which is not the case), Defendant was not bound by an obligation of confidentiality, and therefore Plaintiff would have foregone all rights." Dkt. #1-6 at 4.

Paragraph 44 of the Quadruplica, again, merely denies that the inventions were communicated to Mr. Abramowitz:

> Consequently, it is clear that [Palantir] at that time had not conceived the inventions of the Applications in Suit, in particular not regarding the entire subject matter. Accordingly, such invention can therefore not have been communicated to [Mr. Abramowitz]. We continue to deny [Palantir]'s blanket statements as to the contrary.

Dkt. #1-6 at 13.

Next, paragraph 55 of the Quadruplica says nothing about Abramowitz's recollection. Instead, it cites as a basis for denial a contemporaneous internal email showing that the June 2014 conversation was about "business and corporate law organization." Dkt. #1-6 at 15.

Paragraphs 56 and 57 of the Quadruplica are the only paragraphs that arguably make any affirmative representations of what Mr. Abramowitz remembered of the meeting:

> <u>According to Defendant's recollection in particular</u> technical aspects were not mentioned in the conversation and the term CyberMesh was not mentioned.

> <u>Defendant is consistent in his recollection.</u> Mr. Sankar's recollection on the other hand appears to become ever more "detailed" and "adapted" to suit the needs of Plaintiff's briefs as the proceedings advance, at least to the extent this can be judged based on Plaintiff's submissions.

Dkt. #1-6 at 15 (emphasis added).

Paragraph 58 is a multi-part, point-by-point denial of what information was allegedly communicated by Mr. Sankar to Mr. Abramowitz at the June 10, 2014 meeting. *Id.* at 15–16. For example, in this paragraph, Mr. Abramowitz asserts that Mr. Sankar "did <u>not</u>" "explain to [Mr. Abramowitz] the inefficiencies of the cyber security market with regard to the difficulties in determining adequate insurance coverage" (*id.*, ¶

58(a) (emphasis in original)); "explain the whole concept of the CyberMesh and how to make money with it or how it was set up in detail" (*id.*, ¶ 58(c)); or "explain how information is shared in the CyberMesh, how confidentiality interests can also be taken into account in the automated exchange of data and information, and what information might be specifically affected by this" (*id.*, ¶ 58(e)).

The final Quadruplica paragraph cited as evidence of criminal conduct by Mr. Abramowitz and his lawyers, paragraph 59, is a denial that Mr. Abramowitz "eagerly took notes or made detailed memos" during the June 2014 meeting. The paragraph explains that this is denied because Mr. Abramowitz, "has no habit of taking notes during conversations and no notes of this meeting exist." Dkt. #1-6 at 17. A person can have no recollection of a meeting and still truthfully say that he did not take notes at the meeting because it is never his practice to take notes.

Pointing to Mr. Abramowitz's American deposition testimony that he had no recollection of the June 2014 meeting, and comparing it to the above-cited paragraphs, Palantir asserts that "[t]his is a direct contradiction to Mr. Abramowitz's statements in the [German patent proceedings] in which he claimed that he had recollections of the Meeting and could dispute and precisely state what had and had (allegedly) not happened in that meeting." Dkt. #1-2 at 4, ¶ 12.

I reject Palantir's conclusion that the American deposition testimony and German pleading statements are in "direct contradiction." With the utmost respect to German tribunal, I also reject its conclusion that there was criminal conduct or attempted fraud on the court here. As I stated at oral argument, even before I had closely analyzed all the submitted materials, I had serious doubts as to whether there is probable cause to

believe that criminal misconduct occurred. Having now reviewed the submissions in detail, I have no doubt: there is not probable cause to believe that Mr. Abramowitz conspired with his W&C Lawyers to deceive or mislead the German court. Nor can this Court find any reason to apply the crime fraud exception under the less stringent tests supplied by other courts. The reasons are as follows:

First, as I note above, a mere denial that something occurred at a meeting is not an affirmative statement that the denier has a recollection of what did occur at the meeting. This is especially so where there are independent reasons for denying what occurred at the meeting. And a broader review of what was actually being presented to the German court makes clear that Mr. Abramowitz's German counsel's written briefs included the many reasons, independent from Mr. Abramowitz's specific memory, why it would have been implausible for Mr. Sankar to have communicated detailed proprietary and confidential information during a relatively short meeting. For example, Mr. Abramowitz's German counsel cited the following as reasons why Mr. Sankar did not (or could not have) provided the disputed confidential information to Mr. Abramowitz at the June 2014 meeting:

- Palantir had not conceived the invention of the Applications in Suit at the time of the alleged meeting. Dkt. #1-6 at 13, ¶ 44.

- It is implausible that there was comprehensive communication of all aspects of the Applications in Suit in a single conversation in which only two people participated and where there was no written documentation of what was said. *Id.*, ¶ 45.

- It is implausible that Mr. Sankar could claim to remember exactly how he communicated all the technical details in a short conversation six years ago. *Id.*, ¶ 46.

- Unlike what is otherwise common in Patent entitlement actions, Palantir does not claim that it gave Mr. Abramowitz any written documentation,

research reports, draft patent applications, or electronic files, or *anything* palpable that might have disclosed its alleged inventions. *Id.* at 13–14, ¶ 47.

- Palantir claims that Mr. Abramowitz has no scientific or technical background, but is only a businessman and an investor, yet simultaneously claims that in a conversation that lasted at most 90 minutes, Mr. Sankar was able to convey "all aspects of its alleged inventions to Mr. Abramowitz. *Id.* at 14, ¶¶ 50–51.

- The disputed patent applications cover 123 pages, and their substance could not be communicated in 90 minutes. *Id.*, ¶ 53.

- Mr. Sankar's e-mails the day before the meeting and the evening after the meeting did not provide any indication that technical questions were discussed in "great detail" or "minutely," but instead mention only real estate and a subsidiary as items of discussion. Dkt. #1-15 at 6, ¶ 15.

- Mr. Abramowitz does not have a habit of taking notes, no such notes have been found on all of discovery, nor were any notes given to the patent attorney who drafted the specifications of the disputed patents. *Id.*

In sum, the majority of the paragraphs cited by Palantir as evidence of supposed criminal conduct are mere denials by Mr. Abramowitz of the allegation that Mr. Sankar provided detailed information at the disputed meeting. Given that there was a good faith basis for the denials (even in the absence of any specific memory of the meeting), nothing about these denials would have struck an American lawyer as unusual or in conflict with the truth that Mr. Abramowitz did not remember the June 2014 meeting.

Perhaps it is different in the context of German pleading, but under American pleading rules, a denial must respond to the substance of the allegation. *See* Fed. R. Civ. P. 8(b)(1)(B) and (b)(2). Similarly, under the American rules, a failure to deny an allegation (other than one relating to the amount of damages) is deemed admitted if a responsive pleading is required and the allegation is not denied. Fed. R. Civ. P. 8(b)(6). The denial of an allegation puts the opposing party to its proof. And there is no

requirement that a denial of a specific allegation be based on a party's own personal memory or personal knowledge. Thus, to an American lawyer's mind, the pleadings submitted on Mr. Abramowitz's behalf in the German proceedings would not have necessarily been viewed as inconsistent with Mr. Abramowitz's testimony concerning his lack of recollection of the meeting.

As noted, there are only two places, buried among 139 pages of 567 fact-intensive, legally complicated paragraphs, where Mr. Abramowitz's German counsel makes reference to Mr. Abramowitz's supposed "recollection." And even those two short references are ambiguous. First, the Quadruplica, on page 14 of 23, states that per Mr. Abramowitz's "recollection," "technical aspects were not mentioned" in the June 2014 conversation and "the term CyberMesh was not mentioned." Dkt. #1-6 at 15, ¶ 56. Even if he had no specific recollection of the meeting, Mr. Abramowitz could nevertheless truthfully say that "technical aspects were not mentioned" and neither was "Cybermesh," because he does not remember hearing *any* technical details or the word "Cybermesh" from Sankar at *any* time. At worst, this use of the term "recollection" in this context is ambiguous.

The reference to Mr. Abramowitz's "recollection" being "consistent" is also, at worst, ambiguous. It is used in a paragraph that contrasts Mr. Abramowitz's memory of not having ever received any technical information from Mr. Sankar, which was unchanging, with Mr. Sankar's recollection, which the Quadruplica brief describes as "ever more 'detailed' and 'adapted' to suit the needs of Plaintiff's briefs as the proceedings advance." *Id.*, ¶ 57.

Thus, a review of the materials submitted does not suggest, at least to this American-trained lawyer and jurist, that Mr. Abramowitz and the W&C Lawyers were somehow conspiring to deceive the German court. Assuming it is true that the W&C Lawyers did convey to Mr. Abramowitz's German counsel that Mr. Abramowitz had no specific memory of the June 10, 2014 meeting (as German counsel has now acknowledged), there would have not necessarily been any alarm bells that would have gone off in the minds of the W&C Lawyers that the German pleadings potentially were conveying the wrong impression to the German court. And Mr. Abramowitz, who testified that he had communicated the facts to the W&C Lawyers, in reviewing these dense, translated documents, would not necessarily have perceived that in making two short references to his "recollection" in 139 pages of material, his German's counsel's pleadings were conveying a falsehood to the German court.

Obviously, the German court was concerned about the fact that Mr. Abramowitz's German counsel said that he had only learned a few days before the October 2021 hearing that Mr. Abramowitz had no specific memory of the June 2014 meeting. In making his correction of this error to the German court, Mr. Abramowitz's German counsel reviewed attorney-client privileged and work product communications from the W&C Lawyers and confirmed that he had in fact been told (at least twice) by the W&C Lawyers that Mr. Abramowitz did not remember the June 2014 meeting.

Palantir claims that it cannot test Mr. Abramowitz's German counsel's correction of the record without access to the privileged communications themselves. Mr. Abramowitz submitted to me under restriction the two disputed email documents for in camera review. *See* Dkt. #20. I have confirmed that these e-mails reflect attorney-client

and attorney work product material. I can also confirm that there is no indication of any criminal conduct in either e-mail. *See* Dkt. #20 at 3, 9 (emails of October 7, 2019 and October 3, 2020, filed under restriction). To the contrary, and without reciting the contents verbatim, the relevant portions of the two e-mails reflect exactly what Mr. Abramowitz's German counsel told the German court in his Personal Statement: that the W&C Lawyers informed German counsel "in writing on 7 October 2019 that [Mr. Abramowitz] had already testified to having no recollection of the meeting on 10 June 2014. This was subsequently repeated in writing on 3 October 2020, a few days before the Quadrupilca was filed." Dkt. #1-15 at 3.

I have conducted my own review of the materials submitted to the German court. I have considered Mr. Abramowitz's German counsel's correction of his misstatement. I have reviewed in camera the attorney-client privileged emails which confirm the accuracy of the correction—that the W&C Lawyers had told Mr. Abramowitz's German counsel of his testimony in the United States that he did not remember the June 10, 2014 meeting with Mr. Sankar. In light of all this information, I conclude there is no basis from which to conclude that the W&C Lawyers conspired with Mr. Abramowitz to commit fraud on the German court. Thus, Palantir has not made out a prima facie case that the crime-fraud exception should apply to breach the attorney-client privilege. This is so, no matter the standard used to establish a prima facie case. I do not find probable cause to believe that a crime has occurred. Nor, if the case were to go to trial on the evidence submitted would I allow the issue to go to a jury. In light of all the information currently before this Court (as opposed to what was before the German court when it issued its

criminal complaint), no reasonable jury could find that the W&C Lawyers conspired with Mr. Abramowitz to commit litigation fraud.

**No Waiver of the Attorney-Client or Work Product Privilege**

Further, I find that Mr. Abramowitz has not waived attorney-client privilege regarding his or his attorneys' preparation of the submissions to the German court. None of the three bases for waiver asserted by Palantir is persuasive.

For there to be an implied waiver of the attorney-client privilege under the Tenth Circuit's *Frontier Refining* standard, there must be an "affirmative act" of some kind by the party claiming privilege to put the privileged communication "at issue by making it relevant to the case." I do not find any affirmative act by Mr. Abramowitz to have put any privileged communication at issue.

First, Palantir claims that Mr. Abramowitz put his lawyers' advice "at issue," when, in response to direct questions from the German court, Mr. Abramowitz answered: "The US lawyers consulted with the German lawyers on the content of the pleadings. I relied on my US lawyers, as they know the facts." Dkt. #1 at 22 (citing Dkt. #1-9 at 4). This is not a sufficient "affirmative act" to justify waiving the privilege. If it were, then any response, in any deposition or court hearing, that a deponent had consulted with his lawyers in advance of the deposition or hearing and relied on their legal advice in preparing, would arguably be a waiver of privilege with respect to all the preparations. Such a rule makes no sense. For example, in *Aull v. Cavalcade Pension Plan*, 185 F.R.D. 618 (D. Colo. 1998), the court addressed a suit against a pension plan for adopting a disputed interpretation of the plan. The plaintiff asserted that the interpretation was unreasonable and was adopted in bad faith. One of the plan

representatives testified in deposition that the plan committee had relied on the advice of counsel in denying the pension claim. The court held that merely stating in deposition testimony that the plan had relied on advice of counsel "does not establish an at issue waiver as to this advice." 185 F.R.D. at 630.

Similarly in *Oil, Chemical & Atomic Workers International Union (OCAW) v. Sinclair Oil Corp.*, 748 P.2d 283 (Wyo. 1987), it was argued that the defendants in a libel case had waived attorney-client privilege by stating during discovery that their decision to publish an allegedly libelous letter was made with the advice and assistance of counsel. Notwithstanding the fact that reliance on a formal defense of advice of counsel might be held to constitute a waiver of the attorney-client privilege, the Wyoming Supreme Court rejected the argument that merely stating in response to questions posed at a deposition that an attorney participated in the decision to publish could amount to a waiver of the privilege. *Id.* at 290; *see also* Edna Epstein, *Attorney-Client Privilege & the Work Product Doctrine 1.IVT.5* (6th ed. 2017) (explaining that if the law were otherwise, "the privilege veil could be stripped in virtually any and every situation that a party has consulted with an attorney and answered affirmatively to the question whether it had done so.").

In addition, the context in which Mr. Abramowitz's answer was given is important. As Palantir itself says, Mr. Abramowitz was testifying under oath in a foreign country, responding to direct questions from the German court, and was subject to "the threat of immediate arrest." Dkt. #1 at 11. It can hardly be argued that a truthful response to a question from a foreign tribunal about the involvement of counsel in reviewing pleadings, under the threat of immediate arrest, constitutes a voluntary affirmative act

33

sufficient to waive the attorney-client privilege. *See Riggins v. City of Louisville*, 2008 WL 11429560, at *1 (D. Colo. May 28, 2008) (stating, in the context of inadvertent disclosure, that "[a]n involuntary disclosure . . . does not constitute a waiver"); *Equity Analytics, LLC v. Lundin*, 248 F.R.D. 331, 334 (D.D.C. 2008) ("[A] judicially compelled disclosure of otherwise privileged information is not a waiver of any privilege that could be claimed."). Mr. Abramowitz did not disclose the any attorney-client communications in his answer and was truthfully responding to inquiries from the German court.

This is unlike the "at-issue waiver" case cited by Palantir in its reply, *United States v. Osage Wind, LLC*, Case No. 14-cv-704-GKH-JFJ, 2021 WL 149266 (N. D. Okla. Jan. 16, 2021). In *Osage Wind*, the defendants had affirmatively pled that their conduct (later determined to be illegal) was taken in good faith "based upon a detailed legal analysis." *Id.* at *3. This was deemed to be a waiver of the privilege because their good faith belief and the detailed legal analysis was injected into the case by this affirmative defense. *Id*. at *5–6. By contrast, in this case, there has been no formal pleading of reliance on advice of counsel by Mr. Abramowitz and no "at-issue" waiver.

Second, there was no implied waiver by Mr. Abramowitz when his German counsel took the entirely appropriate step of correcting his misstatement to the German court. Had German counsel correctly answered the question when initially asked, there would have been no arguable waiver of privilege. The fact that German counsel corrected his misstatement after reviewing correspondence with Mr. Abramowitz's American counsel does not mean that Mr. Abramowitz waived privilege with respect to all underlying documents or communications between Mr. Abramowitz, his American lawyers, and his German lawyer. In the American legal system a lawyer owes a duty of

candor to the tribunal as an officer of the court. *See* Colorado Rule of Professional Conduct 3.3(a)(1) ("A lawyer shall not knowingly make a false statement of material fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."). It appears that German courts have similar expectations of truth and candor from lawyers who practice before them, which includes a duty to retract a statement a lawyer later realizes to be untrue. *See, e.g.*, Dkt. #15-1 at 5–6, ¶¶ 11–13, Decl. of Dr. Anke C. Sessler.

I agree with Mr. Abramowitz's position that he is not relying on the post-litigation, internal communications amongst his lawyers to defend the patent case. The two communications referenced by his German lawyer in making his correction have no bearing on the underlying patent case other than to substantiate the correction by Mr. Abramowitz's former German counsel. In addition, as previously explained, I have reviewed the disputed communications in camera and they reflect exactly what is represented.

Finally, there was no waiver when Mr. Abramowitz sought, via the motion in limine in ongoing American litigation in Delaware, to preclude reference to the German proceedings. The motion in limine, filed December 8, 2021 in the Superior Court of the State of Delaware (Dkt. #1-22), does not disclose any attorney-client privileged communications and is not using the privilege as a sword. The limited passage of the motion in limine to which Palantir refers reads as follows:

> As Palantir knows, Abramowitz has consistently testified, starting in 2017, that he does not remember any such meeting. When addressing that same issue in his German briefs, Abramowitz unsurprisingly intended to give a consistent account and deny Palantir's allegations about the meeting for multiple reasons, including because he was never provided any technical information from Palantir relating to the patent applications, either

in June 2014 or at any other time. But the German court understood Abramowitz's German briefs—which were drafted by German lawyers and submitted in German [n.1]—to suggest that Abramowitz remembered a purported meeting from seven years before. That was not what Abramowitz intended to convey.

Dkt. #1-22 at 3–4. The footnote included in this passage reads, "Neither Abramowitz nor his US counsel speak German. Drafts of the brief were reviewed in translation." *Id.*

Palantir argues that this footnote should be read to say that Abramowitz is suggesting "any mistakes in is German filings were the result of faulty translations of the draft German filings," Dkt. #1 at 22, and that this constitutes an implied waiver of the attorney-client privilege. This is weak sauce indeed. The motion in limine argues that the German proceedings are completely irrelevant to whether Palantir interfered with Abramowitz's ability to sell his stock in 2015 and that any reference to convoluted German litigation would be confusing to the Delaware jury. Dkt. #1-22 at 2–3, 5–6, 8–9. The section cited above was necessary to paint the picture of how confusing any reference to the German litigation would be. Nothing about that submission in Delaware constitutes a waiver of Mr. Abramowitz's attorney-client privilege.

## CONCLUSION

For the foregoing reasons, I find that Palantir's request under 28 U.S.C. § 1782 to obtain a deposition of Mr. Abramowitz and subpoena documents from his American counsel is improper because it seeks attorney-client privileged information and attorney work product. Mr. Abramowitz's the attorney-client privilege has not been waived with respect to this information. I have also reviewed in camera the disputed documents and do not find any basis to find that the crime-fraud exception to the attorney-client privilege would apply. Because the application seeks attorney-client privileged

information as to which no exception applies, granting the application would violate 28 U.S.C. § 1782 and constitute an undue burden under the discretionary factors listed by the Supreme Court.

Therefore, Petitioner Palantir's application is **DENIED.**


**NOTICE: Rule 72(a) of the Federal Rules of Civil Procedure provides that when a pretrial matter not dispositive of a party's claim or defense is referred to a Magistrate Judge to hear and decide, the Magistrate Judge must issue a written order stating the decision. Within fourteen (14) days after service of a copy of this Minute Order, any party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a). Failure to make any such objection will result in a waiver of the right to appeal the non-dispositive order. *See Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.* 989 F.3d 747, 782 (10th Cir. 2021) (firm waiver rule applies to non-dispositive orders)**

Dated:          June 30, 2022
                Denver, Colorado              _____
                                              N. Reid. Neureiter
                                              United States Magistrate Judge